Laracuente v Mora (2004 NY Slip Op 50297(U))

[*1]

Laracuente v Mora

2004 NY Slip Op 50297(U)

Decided on April 19, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 19, 2004

Supreme Court, Kings County
 JOSETTE LARACUENTE, Plaintiff,
against
FELIPE MORA, JOSE ORTIZ, PEDRO JABIEL, and HECTOR MESA, Defendants.
Index No. 5091/02

Yvonne Lewis, J.
By way of motion for summary judgment, pursuant to CPLR 3212, the Defendants, Felipe Mora and Jose Ortiz seek an "Order dismissing the Plaintiff's complaint in this motor vehicle personal injury action on the basis of the inability of the Plaintiff to establish the existence of a 'serious injury' pursuant to Insurance Law 5102." The remaining Defendants have joined in that application by way of an affirmation with memorandum of law in support thereof.
This case arises from a March 12, 2001 automobile accident involving two vehicles, one operated by Defendant Ortiz (owned by Defendant Mora with the Plaintiff as a backseat passenger), the other by Defendant Mesa (owned by Defendant Jabiel). According to the Defendants, "the Plaintiff testified at her deposition that following the accident, she was taken to Lutheran Hospital by ambulance. She complained of neck and stomach pains. . . .no x-rays were taken and the Plaintiff was discharged at one o'clock in the morning about one and a half hours after the accident. . . . Thereafter, the Plaintiff went on her own accord to St. Mary's Rehab. . . . [where she was] prescribed physical therapy. . .took an MRI[;] but no medication was given. . .her current complaints consist of pains in her neck, shoulder, and back. . . .[she] testified to have stayed in bed all day only one day after the accident occurred." In addition, the defense notes that Robert Orlandi, MD, FACS, conducted an orthopedic examination of the Plaintiff which demonstrated that ". . .the Plaintiff had an excellent cervical range of motion with 60 degrees of extension, 80 degrees of rotation to the right and left, and full forward flexion to 50 degrees. The examination of her shoulders revealed no angular or rotary deformity. Examination of her low[er] back revealed a mild increase in lumbar lodosis to 50 degrees. Dr. Orlandi opined that the Plaintiff does not need any further treatment and is capable of a full level of activities of daily living." Radiologist James Naidich, MD reported that ". . .there was a small, right-sided, posterior herniation of the L5-S1 disc. The disc herniation was too small to impinge on the thecal sac or neural foramina to produce neurological symptoms. . . .No other posterior disc herniations, fractures, or other specific posttraumatic abnormalities were present."
Defendants Jabiel and Mesa's memorandum of law notes that five of the nine categories of serious physical injuries listed in Insurance Law 5102(d) are clearly inapplicable herein inasmuch as there is no allegation of death, dismemberment, significant disfigurement, fracture, or loss of a fetus. In addition, it is asserted that the injuries that arguably could have applied are not borne out by the medical evidence and/or the Plaintiff's deposition statements; to wit, 1. [*2]permanent loss of use of a body organ, member, function, or system; 2. permanent consequential limitation of use of a body function or system; and/or 3. a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's ususal and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
According to Plaintiff's counsel, the Plaintiff, both in her affidavit in opposition to the Defendant's motion for summary judgment herein and in her deposition testimony, speaks of ". . . current and persistent complaints with regards to her neck, back, and shoulders, including significant limitations in her daily activities in that she is unable to lift heavy objects, unable to exercise, unable to clean her house, unable to dance or play basketball, unable to enjoy activities with her child (such as picking up her child or playing for an extended period of time with her child )." Plaintiff's counsel stresses the fact that the "Plaintiff had none of the aforementioned complaints and restrictions prior to the date of the accident." Counsel further argues that these complaints were confirmed by Dr. Hoffer, her treating chiropractor, who after reviewing the Plaintiff's entire medical chart and examining the Plaintiff on November 13, 2003, concluded on the basis of computerized range of motion testing the following, "Lumbar: decreased range of motion flexion 30%, extension, left and right rotation 30%, as compared to normal function. Cervical: decreased range of motion flexion, left and right rotation 30%, extension 25% as compared to normal function." In short, the Plaintiff maintains that the foregoing establishes sufficient issues of fact exist to contradict the Defendants' allegation that she sustained no serious physical injury; i.e., that "Dr. Hoffer, as a result of his review of plaintiff's previous care and recent examination, medical chart and MRIs, has determined that the injuries sustained by Ms. Laracuente are a direct result of the accident she was involved in on March 12, 2001, and that the injuries she sustained are consistent with how the accident occurred. Dr. Hoffer further opines that Ms. Laracuente's complaints and the objective findings are consistent with her MRI results and other objective testing, personally reviewed/conducted by him. Additionally, Ms. Laracuente still suffers from the injuries she sustained on March 12, 2001, and that given the duration and persistence of her injuries, they are permanent in nature. . . .[and] based upon a reasonable degree of medical certainty. . .Ms. Laracuente has sustained a serious injury that significantly limits her functions with respect to her back, neck, and shoulders, as compared to normal functioning and that her injuries are permanent and serious in nature."
In reply, the Defendants assert that ". . .both the orthopedic examination of Robert J. Orlandi, M.D., F.A.C.S., P.C. and the review of plaintiff's MRI conducted by Dr. James B. Naidich, M.D. have revealed no abnormalities and no limitations. As such, defendants have met their burden to establish that the plaintiff fails to meet her burden to establish that she sustained a serious injury as defined by Section 5120 (d) of the Insurance Law. Accordingly, it is 'incumbent upon the plaintiff to demonstrate' that she has suffered a 'serious injury'. . . .her own affidavit containing numerous subjective complaints of injury and limitation. . .[is] insufficient to establish a triable issue of fact. . . .'the affirmation of [a] chiropractor does not constitute competent evidence'. . . .Accordingly, the plaintiff has failed to submit competent evidence to [*3]establish that she has sustained a serious injury under the Insurance Law."
On the evidence presented by the Defendants, a prima facie showing has been made that the Plaintiff did not sustain a serious injury within the meaning of Insurance Law §5102(d). However, the Plaintiff, in turn, has submitted proofs sufficient to raise triable issues of fact with regards to the seriousness of her injuries. Contrary to the Defendants' contention, the affidavit of her treating chiropractor, on the basis of a review of her previous care, entire medical chart, recent examination, and MRIs, establishes that her injuries were a direct result of the accident that she was involved in on March 12, 2001; that the injuries which she sustained are consistent with how the accident occurred, and significantly limits her functions with respect to her back, neck, and shoulders, as compared to normal functioning; and, that her injuries are permanent and serious in nature. In light of her chiropractor's affidavit which attests to objective tests performed and decreased ranges of motion to the Plaintiff's lumbar and cervical spines, this court finds that sufficient issues of fact have been raised to defeat the Defendants' request for summary judgment on the issue of serious injury.(See Acosta v. Rubin, 2 AD3d 657, 768 NYS2d 642, citing Figueroa v. Westbury Trans., 304 AD2d 614, 757 NYS2d 756; Elfiky v. Harris, 301 AD2d 624, 754 NYS2d 59; Jelicks v. Camacho, 305 AD2d 373, 757 NYS2d 901, and Toure v. Avis Rent A Car Sys., 98 NY2d 345, 746 NYS2d 865). In addition, it remains to be ascertained whether any gap in Plaintiff's treatment was attributable solely to the her having reached maximum medical improvement or due to financial constraints. Accordingly, the Defendants' collective request for summary judgment is denied in its entirety. This constitutes the decision and Order of this Court.
 JSC
Decision Date: April 19, 2004